STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

}
In re: Moore Accessory Structure Permit     } Docket No. 161-8-09 Vtec
     (Appeal of Smith and Siebeck)                }
                                                                    }

Decision and Order on Cross-Motions for Summary Judgment

Appellants Gary Smith and Betsy Siebeck (Appellants) appealed from a July 18, 2009 decision of the Zoning Board of Adjustment (ZBA) of the Town of Pomfret, related to property of A. David Moore located at 6872 Pomfret Road.  Appellants are represented by Marsha Smith Meekins, Esq.; Appellees A. David Moore, his sister Emily Moore Grube, and the Moore Family Partnership, LP (Appellees) are represented by A. Jay Kenlan, Esq.; and the Town of Pomfret is represented by Amanda S.E. Lafferty, Esq.

The ZBA decision upheld the Zoning Administrator's grant of Permit #08-8 to construct a building on David Moore's property to house a wood planer and to store wood shavings.  The ZBA decision also upheld the Zoning Administrator's March 25, 2009 and April 15, 2009 determinations that the existing structures and uses on David Moore's property were in compliance with the Pomfret Zoning Ordinance.

The parties have moved for summary judgment as to whether the proposed new building is exempt or requires a permit from the ZBA under Part 7 of the Zoning Ordinance, and whether the lumber processing operations (sawing, planing, and drying lumber) on the property constitute violations of the Zoning Ordinance or of the existing permits applicable to the property.  The following facts are undisputed unless otherwise noted.

The Moore and Hewitt families have owned and operated farming property

1

near Hewitts Corner in the Town of Pomfret, approximately a thousand acres in area, for over 275 years. As of the adoption of zoning in Pomfret in approximately 1972, the farm property was owned by Hewitt and Dorothy Moore, the parents of A. David Moore (David Moore), John Moore, and Emily Moore Grube. They cleared fields for hay and for other field crops, bred and raised livestock and farm animals, and sold fruit and vegetables grown in their orchards and fields. No map or diagram of the farm property and its buildings as they existed as of 1972 (or at any other time) has been provided to the Court in connection with the present motions.

Since 1969, David Moore has been a professional custom builder and restorer of tracker pipe organs. From 1969 until 1973 he used an existing two-story farm building, approximately 30′ x 60′ in area, for his pipe organ construction and restoration business. This building is or was located near what is referred to in David Moore's affidavit as the Farm Homestead.[1] The building housed hand tools, and woodworking machinery and power equipment, including a 16″ planer, as well as lumber and other materials.

Section 3.1 of the Zoning Ordinance in effect in 1973 provided that the entire Town is classified as a single Rural Residential zoning district. Part 5 of the 1973 Zoning Ordinance governed uses and structures exempt from any requirement to obtain a permit, Part 6 governed uses and structures requiring a non-discretionary permit from the Zoning Administrator, Part 7 governed uses and structures requiring a permit from the ZBA, and Part 8 governed uses prohibited within the Town. Nothing in the 1973 Zoning Ordinance (or any subsequent zoning ordinance provided to the Court) limits the number of different uses or structures that may be conducted or placed on a single parcel of property.

_____

[1] Material facts may be undisputed, but have not been provided to the Court, as to the locations of this and the other three (or four) dwellings referred to in Appellees' affidavits and statements of material facts.

2

In 1973, Hewitt and Dorothy Moore deeded an approximately ten-acre parcel from the farm property to David Moore (the David Moore Parcel) for him to build a workshop for his pipe organ construction and restoration business.[2] He applied to the ZBA for approval of a so-called "non-conforming use[3] permit under Part 7 of Ordinance," for the construction of a new two-story, 80' x 38' building on the David Moore Parcel, set back 245 feet from the road right-of-way, for use as an "organ shop" (the "Organ Shop Building").[4] In May of 1973, the ZBA granted approval[5] and a permit was issued (Permit #29: "the 1973 Organ Shop Permit"); it was not appealed. David Moore completed construction of the Organ Shop Building and began using it for his business as of the winter of 1973–74.

---

[2] The deed gave the grantors a right of first refusal to repurchase the property and, as long as the grantors owned adjacent property, required consent of the grantors for the construction of any buildings other than the pipe organ shop on the parcel. Approximately 80% of this parcel remains in tillage and pasture use by Emily Grube as of the present.

[3] Section 4.5 of the Zoning Ordinance defines "conforming use" in full as "single, one-family or two[-]family residence, agricultural buildings, home business"; § 4.6 defines "non-conforming use" as all other uses. See discussion at 14–15 below. Section 7.2 of the Zoning Ordinance in effect in mid-1973 authorized the ZBA to issue a permit for uses other than those listed as "conforming uses" upon finding that the proposal "will not adversely affect the capacity of existing or planned community facilities, the character of the area affected, traffic on roads or highways in the vicinity, bylaws then in effect, and the public health . . . and general welfare." These standards reflected the statutory requirements for conditional use approval (rather than those for nonconforming uses). See 24 V.S.A. § 4407(2)(A-E)(2003).

[4] Paragraphs 14 through 17 of David Moore's Affidavit reflect that he obtained title to this property after an initial application for the same structure and use was rejected by the ZBA due to his not having title to the underlying land. The parties have not provided a copy of this rejected permit; the ZBA decision to reject the initial permit application for that reason does not appear to have been appealed.

[5] No party has provided a written decision of the ZBA or the minutes of the meeting at which the vote was taken to grant this approval. No conditions appear on the portion of the application form in which the ZBA's decision is noted as having been approved.

As of the present, David Moore uses the Organ Shop Building for his pipe organ construction and restoration business. David Moore and two associates use a variety of hand tools, woodworking machinery, and power equipment in the Organ Shop Building. A 16″ Powermatic wood planer was installed in the Organ Shop Building in 1973–74. It planes one side of a board at a time but does not plane or mill the edges of the board. Until acquisition of the Newman Planer in 2008, the Powermatic wood planer was used to plane lumber both for the pipe organ construction and restoration business and for the farm buildings and residences.

In 1974, Hewitt and Dorothy Moore deeded a 135-acre parcel from the farm property to Wally and Emily Grube (the Grube Parcel); Emily Grube continues to manage it as an apple orchard and to grow berries and other fruit.

In 1980, A. David Moore applied to the Zoning Administrator under Part 6 of the Zoning Ordinance[6] for a permit to build a new one-story, 45′ x 14′ "accessory" building on the David Moore Parcel, set back 350 feet from the center of the road, for use as a "sawmill". The Zoning Administrator issued a permit, which was not appealed; however, the building was not built and the permit expired.

In 1982, David Moore Inc., through A. David Moore, applied to the Zoning Administrator under Part 6 of the Zoning Ordinance for a permit to build a new one-story, 46′ x 28′ "accessory" building on the David Moore Parcel, set back 160 feet from the center of the road, for use as a "sawmill" (the "Sawmill Building"). Nothing appears on the permit application regarding the type or size of the saw blade, the source of power for the saw, or the proposed storage of logs on the

---

[6] Section 6.3 of the Zoning Ordinance authorizes the Zoning Administrator to issue permits for the "construction or emplacement of conforming structures for agricultural use larger than 24 feet x 24 feet x 15 feet high." Part 6 also authorizes the Zoning Administrator to issue permits for single conforming one-family or two-family residences on lots at least two acres in area with at least 90 feet of road frontage, and to issue permits for new home businesses.

property, nor regarding the source of the logs nor the destination of the lumber produced by the sawmill's operation. The Zoning Administrator issued the permit (Permit #407: "the 1982 Sawmill Permit"); it was not appealed.

The Sawmill Building was completed by early 1983. It housed a circular sawmill with a 48-inch blade, operated by a tractor power takeoff. Since 1983, David Moore has stockpiled softwood logs outside on the David Moore Parcel near the Sawmill Building, and has stacked the sawn softwood lumber for air drying outside on the David Moore Parcel near the Sawmill Building.

Effective on May 19, 1988, the legislature first enacted the provision that has been expanded over time to the present 24 V.S.A. § 4413(d), then providing in full that:

> [n]o [municipal] plan or bylaw adopted under this chapter[7] shall restrict accepted agricultural or silvicultural practices as defined by the commissioner of agriculture or the commissioner of forests, parks, and recreation, respectively, under 10 V.S.A. §§ 1021(f) and 1259(f).

1987, No. 200 (Adj. Sess.), § 31 (then codified at 24 V.S.A. § 4494).

At some time after 1974 but before 1990, David Moore constructed an attached shed addition on the west end of the Organ Shop Building for storage of firewood to heat the Organ Shop building (the "Organ Shop Woodshed Addition"). He did not apply for a zoning permit or for an amendment to the 1973 Organ Shop Permit for this addition.

In 1993, Dorothy Moore, John Moore, David Moore, and Emily Grube formed the Moore Family Farm Limited Partnership (the Farm Partnership) for the purpose of maintaining the farm in cooperative agricultural use by family members.

---

[7]    Oddly, all the editions of the Pomfret Zoning Ordinance recite that they are adopted under 24 V.S.A. chapter 91; this is undoubtedly a misstatement that has been perpetuated from one amendment to another, as chapter 91, in existence since 1964, governs Consolidated Water Districts. The state zoning enabling statute is found instead at 24 V.S.A. ch. 117.

Dorothy Moore transferred all of the remaining farm property in her ownership to the Farm Partnership (the Partnership Property). David Moore, John Moore, and Emily Grube also own, as tenants in common, a parcel of property deeded to them by their aunt Persis Johnson (the Johnson Parcel), contiguous to the Partnership Property.[8] The affidavits submitted by David Moore, John Moore, and Emily Grube reflect that they consider the land consisting of the Partnership Property, the Johnson Parcel, the Grube Parcel, and at least the cultivated portion of the David Moore Parcel, to be a farm jointly managed by them as a whole.[9] At the present time approximately 100 acres of the Farm-related Properties are used as crop land, 50 acres are used as pasture, 200 acres are managed as sugarbush, and 850 acres are managed as forest land, although no evidence has been provided in connection with these motions of any forest management plan, either for the sugarbush or for the other forest land.

As well as the buildings and structures specifically described in relation to the David Moore Parcel, six barns and four residences are located on the Farm-related Properties. The "orchard barn" is located on the Grube Parcel. The "Sherburne Farm barn and the "large homestead barn" are located on the Partnership Property. Material facts are undoubtedly not disputed, but have not been provided to the Court, as to the specific parcel location of the remaining three barns. One of the single-family residences, occupied by John Moore and his family, is located on the Johnson Parcel; another of the single-family residences, occupied by David Moore and his wife, is located on the Partnership Property. Material facts are undoubtedly not disputed, but have not been provided to the Court, as to the specific parcel

---

[8] Material facts are in dispute, or at least have not been provided to the Court, regarding the date of this transfer and the size of the Johnson Parcel.

[9] As necessary, this decision will refer to these four properties collectively as "the Farm-related Properties."

location of the other two single-family residences, one of which is occupied by Emily Grube, and one of which is rented out.

The three siblings have divided management responsibilities among themselves as follows for the agricultural and silvicultural activities on the Farm-related Properties. John Moore manages the cropland, including tilling, fertilizing, harvesting, and selling the crops produced on the cropland. Emily Grube raises the beef cattle, maintains the greenhouses, raises and sells potted plants and Christmas trees, operates the apple and berry orchards, manages the sugarbush and sugarhouse, and sells maple syrup and other products of the farm. David Moore manages and improves the woodlands and sugarbush,[10] harvests logs for lumber and firewood, saws and mills lumber, and provides sawdust and shavings for livestock bedding, as well as operating his pipe organ design and renovation business. The lumber milled by David Moore is used for building repair and construction of the barns and other agricultural buildings and of the residences on the Farm-related Properties, as well as in his pipe organ construction and restoration business. He has also provided lumber to his son, a professional forester, in return for his son's forestry services to the Farm Partnership; the lumber was used in the construction of his son's residence in another town.

Effective June 21, 1994, the legislature revised the provision that is now further revised and codified as 24 V.S.A. § 4413(d), then providing in full that:

> (a) For purposes of this section, "farm structure" means a building for housing livestock, raising horticultural or agronomic plants, or carrying out other practices associated with agricultural or farming practices, including a silo, as "farming" is defined in [10 V.S.A. § 6001(22)], but excludes a dwelling for human habitation.

---

[10]   Material facts have not been provided to the Court as to the location of the woodlands or the sugarbush on any of the Farm-related Properties.

(b) No plan or bylaw adopted under this chapter shall restrict accepted agricultural or farming practices, or accepted silvicultural practices, including the construction of farm structures, as such practices are defined by the commissioner of agriculture or the commissioner of forests, parks and recreation, respectively, under [10 V.S.A. §§ 1021(f) and 1259(f) and 6 V.S.A. § 4810].

(c) A person shall notify a municipality of the intent to build a farm structure, and shall abide by setbacks approved by the commissioner of agriculture, food and markets. No municipal permit for a farm structure shall be required.

1993, No. 233 (Adj. Sess.), § 92 (then codified at 24 V.S.A. 4495).

In 1997, A. David Moore applied to the Zoning Administrator under Part 6 of the Zoning Ordinance for a permit to build a new one-story, 45' x 22' "accessory" building on the David Moore Parcel, set back 250 feet from the center of the road, for use as a "garage" for "storage [and] vehicle storage" (the "Garage/Storage Building"). The Zoning Administrator issued the permit (Permit #97-17: "the 1997 Garage/Storage Permit"); it was not appealed. David Moore uses the Garage/Storage Building to store lumber, equipment, machinery, and vehicles. Material facts have not been provided as to whether the items stored in this building pertain to the pipe organ construction and restoration business, or to activities related to the Farm-related Properties, or to both.

After Dorothy Moore's death in 1999, David Moore, John Moore, and Emily Grube became the general partners of the Farm Partnership, each with a one-third interest. They, together with their respective children, are the limited partners of the Farm Partnership.

In 1999, the Farm Partnership purchased a WoodMizer bandsaw sawmill, operated by its own gasoline engine, for David Moore to use instead of the original circular sawmill.[11] David Moore constructed a 27' by 11' open shed structure, less

_____

[11] The original circular sawmill remains in the Sawmill Building but as of the date of

8

than 15 feet in height, on the David Moore Parcel behind the Organ Shop Building, to house the WoodMizer bandsaw sawmill (the "WoodMizer Bandsaw Sawmill Shed"). Neither David Moore nor the Farm Partnership applied for a zoning permit for the WoodMizer Bandsaw Sawmill Shed, considering it to be exempt under § 5.4. Under § 5.4, the "construction or emplacement of a conforming new unattached accessory structure not larger than 24 feet x 24 feet x 15 feet high" does not require a permit, regardless of whether it is for an agricultural use or for any other use.[12] The WoodMizer bandsaw sawmill is more efficient, safer and easier to operate, and less noisy than the circular saw sawmill.

From 1999, David Moore's use of the WoodMizer bandsaw sawmill entirely replaced his use of the circular saw sawmill to saw specialty hardwood lumber for the pipe organ construction and restoration business and to saw lumber for use on the Farm-related Properties. With regard to logs cut from the Farm-related Properties, he uses the WoodMizer bandsaw sawmill to provide lumber for the construction, maintenance, and repair of buildings and structures on the David Moore Parcel and the Farm-related Properties, including for the residences, and to provide, as a byproduct, slab wood used for fuel for sugar making, and to heat the Organ Shop and the residences. Facts are disputed, but may not be material to this appeal, as to when and how much lumber or byproduct has been sold by David Moore to others unrelated to the Farm-related Properties; his Supplemental Affidavit states that it is incidental to and does not exceed 10% of the production in any year and does not drive his decision of how much lumber to saw and mill in any year. Supplemental Affidavit of A. David Moore at ¶ 18.

In 2001, David Moore constructed an attached storage bin addition on the

---

the motions is no longer in use.

[12] Structures larger than that size may be approved by the Zoning Administrator under § 6.3 if they are "conforming structures for agricultural use."

9

north side of the Organ Shop Building for the storage of sawdust and wood shavings (the "Organ Shop Sawdust/Shavings Bin Addition").  He did not apply for a zoning permit or for an amendment to the 1973 Organ Shop Permit for this addition.  The Organ Shop Sawdust/Shavings Bin Addition replaced an old horse trailer used for sawdust and shavings storage since 1973.

In 2002, Appellees constructed a sap pump house (the "Sap Pump House") on the David Moore Parcel, enclosing a pump used for pumping sap from maple trees as part of Emily Grube's maple sugaring operation.  Neither she nor David Moore nor the Farm Partnership applied for a permit for the Sap Pump House, as it is smaller than 24' wide x 24' deep x 15' high, considering it to be exempt under § 5.4.

In 2003, David Moore constructed a sap storage shed (the "Sap Storage Shed") to house a maple sap storage tank for use in the Emily Grube maple sugaring operation.  Neither she nor David Moore nor the Farm Partnership applied for a permit for the Sap Storage Shed as it is smaller than 24' wide x 24' deep x 15' high, considering it to be exempt under § 5.4.

Between 2001 and 2003, David Moore constructed a 34' x 12' lumber drying kiln (the Lumber Drying Kiln), referred to both as a "solar" dry[ing] kiln and as a "lean-to" dry[ing] kiln, used to kiln-dry lumber that is sawn on the David Moore Parcel.  Facts have not been provided to the Court regarding whether, if it is a "lean-to" construction, the Lumber Drying Kiln is in fact attached to one of the other buildings.  David Moore did not seek a zoning permit for the Lumber Drying Kiln, considering it to be exempt under § 5.4 as being less than 15 feet in height and having a footprint less than the total square footage of the 24' x 24' limitation in § 5.4.

Effective July 1, 2004, the legislature recodified and further revised the statutory provision regulating municipal permitting of farm structures and regulation of accepted agricultural or silvicultural practices; 24 V.S.A. § 4413(d)

10

provides in full that:

> (d) A bylaw under this chapter shall not regulate accepted agricultural and silvicultural practices, including the construction of farm structures, as those practices are defined by the secretary of agriculture, food and markets or the commissioner of forests, parks and recreation, respectively, under [10 V.S.A. §§ 1021(f) and 1259(f) and 6 V.S.A. § 4810].

> (1) For purposes of this section, "farm structure" means a building, enclosure, or fence for housing livestock, raising horticultural or agronomic plants, or carrying out other practices associated with accepted agricultural or farming practices, including a silo, as "farming" is defined in [10 V.S.A. § 6001(22)], but excludes a dwelling for human habitation.

> (2)  A person shall notify a municipality of the intent to build a farm structure, and shall abide by setbacks approved by the secretary of agriculture, food and markets.  No municipal permit for a farm structure shall be required.

> (3)  A municipality may enact a bylaw that imposes forest management practices resulting in a change in a forest management plan for land enrolled in the use value appraisal program pursuant to 32 V.S.A. chapter 124 only to the extent that those changes are silviculturally sound, as determined by the commissioner of forests, parks and recreation, and protect specific natural, conservation, aesthetic, or wildlife features in properly designated zoning districts. These changes also must be compatible with 32 V.S.A. § 3755.

2003, No. 115(Adj. Sess.), § 95.

David Moore transports the logs harvested from the Partnership Property to the David Moore Parcel by his log truck.  In 2007 he transported the equivalent of ten to twelve full log truck loads onto the David Moore Parcel for sawing.  In 2007, David Moore operated the WoodMizer bandsaw sawmill for a total of 136 hours. In 2008, David Moore operated the WoodMizer bandsaw sawmill for a total of 79 hours (calculated from the facts provided regarding the 2007 and 2009 rates and that the average of the three years was 85 hours per year). In 2009, David Moore operated the WoodMizer bandsaw sawmill for a total of 40 hours.  These facts may be

relevant to the § 11.3 criteria for a Part 7 permit, but may not be material to any issues raised in the present appeal.

Softwood lumber produced from logs harvested on the Farm-related Properties has been used to construct or repair the Sawmill Building, the Organ Shop Sawdust/Shavings Bin Addition, the Garage/Storage Building, the Sap Pump House, the WoodMizer Bandsaw Sawmill Shed, and the Lumber Drying Kiln on the David Moore Parcel; the orchard barn, greenhouse and plant sales building, and sugarhouse on the Grube Parcel; and the Sherburne Farm barn, large homestead barn, and the David Moore residence on the Partnership Property. Lumber produced from hardwood logs, whether from the Farm-related Properties or acquired from third parties, is used in the pipe organ construction and restoration business and is stored in the Organ Shop Building and planed there on the Powermatic planer.

In the summer of 2008, David Moore acquired a 16″ x 6″ Newman planer, supplementing but not replacing his use of the Powermatic planer located in the Organ Shop Building. Both planers are used exclusively to plane lumber that is produced by the sawmill on the David Moore Parcel. The Newman planer simultaneously planes both sides and both edges of a board, and is therefore much faster than the Powermatic planer.

In late fall of 2008, David Moore moved the Newman planer into the Garage/Storage Building to run it from the tractor power takeoff. David Moore operates the Newman planer only as needed to plane lumber for buildings, structures and residences on the Farm-related Properties, and occasionally to plane wood for the pipe organ construction and restoration business. In calendar year 2008, David Moore used the Newman planer for a total of twenty hours for all purposes, and in calendar year 2009, he used it for a total of five hours for all purposes. The application at issue in the present appeal seeks a permit to construct

12

a new 36' x 18' building, 18' in height, on the David Moore Parcel to house the Newman planer and to store wood shavings produced during its operation (the "Newman Planer/Shavings Building").

In 2009, Appellants also asked the Zoning Administrator to take enforcement action, arguing that the lumber-processing operations on the David Moore Parcel violated the Zoning Ordinance, the applicable permits, and the state statute. Appellants' appeals to the ZBA of the Zoning Administrator's rulings on the enforcement request were consolidated with the appeal related to the application for approval of the Newman Planer/Shavings Building. The ZBA's July 18, 2009 decision that is the subject of the present appeal addressed the requests for enforcement as well as the Newman Planer/Shavings Building application.

Appellants' Request for Enforcement

In their attorney's letter dated February 17, 2009, Appellants requested the Zoning Administrator to determine that David Moore's "lumber processing operation" is in violation of the Zoning Ordinance, or of the state statute governing the expansion of non-conforming uses, and to take enforcement action. By letter dated March 25, 2009, the Zoning Administrator first determined that the structures and uses on the David Moore Parcel were in compliance with the Zoning Ordinance, except for the 34' by 12' Lumber Drying Kiln and the 27' by 11' WoodMizer Bandsaw Sawmill Shed, stating that those two structures required permits as they are each larger than the 24' x 24' exemption in § 5.4. The letter allowed David Moore to take any of four possible actions to bring each of these structures into compliance: to apply for and be granted a permit; to demonstrate that the structure was constructed more than 15 years ago; to reduce the structure to a size no greater than 24' x 24'; or to justify that the structure is "exempt as a farm structure."

David Moore asked the Zoning Administrator to reconsider this conclusion,

arguing that the two structures were being used for agricultural or silvicultural purposes, and were therefore statutorily exempt from any municipal regulation under 24 V.S.A. § 4413(d), as well as arguing that the § 5.4 exemption should be read to establish a footprint or area exemption of 576 square feet, rather than limiting each length and width dimension separately to 24 feet. By letter dated April 15, 2009, the Zoning Administrator agreed with the argument that the two structures are "part of the Moore Farm agricultural operation and therefore are statutorily exempt." He concluded that all the structures and uses on the David Moore Parcel were in compliance with the Zoning Ordinance, and therefore declined to take enforcement action.

The Pomfret Zoning Ordinance is unusual in that it does not divide the Town into different zoning districts in which different uses are specifically allowed, either as permitted uses requiring Zoning Administrator approval or as conditional uses requiring ZBA approval. Rather, § 7.1 of the Zoning Ordinance simply requires that any proposal at all, other than those covered by Part 6, exempt under Part 5, or prohibited under Part 8, must apply for and obtain a permit from the ZBA under Part 7.[13] However, the way in which the Pomfret Zoning Ordinance functions is somewhat obscured by that ordinance's unusual usage of the terms "conforming use" and "non-conforming use."[14]

---

[13] Buildings and structures subject to Part 7 also must comply with the setback requirements in § 7.4, requiring a 40-foot side setback, and requiring a road setback measured either as 60 feet from the edge of a public right-of-way or 85 feet to the center of the traveled way, whichever distance is greater.

[14] The parties should note that, as of September 1, 2005, the savings clause of the 2004 statutory changes to 24 V.S.A. ch. 117 superseded inconsistent municipal regulations regarding nonconformities, among other things. 24 V.S.A. § 4481. That section also gave municipalities until September 1, 2011 to come into conformance with any provisions of the state statute that did not have an earlier superseding date.

14

Unlike the state statute, which defines nonconforming use as one that does not conform to the requirements of the present bylaws but did conform to the prior ones,[15] § 4.5 of the Zoning Ordinance defines "conforming use" in full as "single, one-family or two[-]family residence, agricultural buildings, home business," and defines "non-conforming use" in § 4.6 as all other uses.[16]  In that sense, the ordinance has used the term "conforming use" to mean what the state statute calls uses "permitted as of right" and has used the term "non-conforming use" to mean what the state statute calls "conditional uses requiring [ZBA] review and approval."  24 V.S.A. § 4414(1).  Thus, although Part 7 of the Ordinance is entitled "Non-Conforming Uses Requiring Permits" from the ZBA, its text reflects the statutory requirements for issuing conditional use permits rather than those otherwise regulating nonconformities.  Compare 24 V.S.A. § 4414(3)(A)(i–v) (authorizing conditional use approval by an appropriate municipal panel if the proposal does not result in an undue adverse effect on the capacity of community facilities, the character of the area, traffic in the vicinity, bylaws in effect, and renewable energy resources) with Zoning Ordinance § 11.3 (authorizing the ZBA to issue a Part 7 permit upon finding that the proposal conforms with the Town Plan and bylaws, and will not unreasonably burden municipal services, create a health hazard, create a pedestrian or vehicular hazard, create a public nuisance or adversely affect the

---

[15]  The statutory definition also includes "a use improperly authorized as a result of error by the administrative officer." 24 V.S.A. § 4303(15).  The state statute then requires municipalities to define how nonconformities will be addressed, and authorizes them to regulate or limit the expansion or extension of nonconforming uses, structures, and lots.  24 V.S.A. § 4412(7).  The Pomfret Zoning Ordinance does not define how nonconformities, as defined in the state statute, are to be addressed.

[16]  By contrast, §§ 4.7 and 4.8 define the terms "conforming structure" and non-conforming structure" according to whether the structure does or does not conform to the required setbacks.

character of the area or the general welfare of the community) and § 11.10 (authorizing the ZBA to impose reasonable conditions).

Appellants argue that the only use approved for the David Moore Parcel was the pipe organ construction and restoration business contemplated by the Organ Shop Permit, and that the wood processing uses are not authorized unless they are accessory to the pipe organ construction and restoration business. However, unlike many other zoning ordinances, nothing in the Pomfret Zoning Ordinance prohibits a landowner from making multiple uses of a single parcel of property, whether those uses are residential, agricultural, or business or other uses. Nor does anything in the Pomfret Zoning Ordinance, or in the state statutes in effect at the time the various buildings and uses were placed on the David Moore Parcel, prohibit the members of a partnership from conducting agricultural and silvicultural uses on multiple parcels of property, whether owned by the partnership, owned by the individual partners, or leased from others.[17]

Enforcement Request Related to Scope of Existing Permits

Appellants argue that, by bringing logs to the David Moore Parcel from the Farm-related Properties, by sawing those logs, and by planing the resulting lumber,

_____

[17] The Vermont Supreme Court's decision in In re Ochs established that crops grown on leased land can nevertheless be considered to be produced "on the farm" under the definition of farming in 10 V.S.A. § 6001(22), as "the on-site storage, preparation and sale of agricultural products principally produced on the farm," if the applicants exercise sufficient control over the leased lands. 2006 VT 122, ¶¶ 13–14, 181 Vt. 541 (2006) (mem.). In Ochs, the storage and preparation of apples for shipment at an apple orchard qualified as farming, as defined in 10 V.S.A. § 6001(22), even though some of the apples processed for shipment from the facility were grown on leased lands rather than in the orchard on the same property as the storage and shipment building. The Court considered the apples grown at off-site leased orchards to be produced "on the farm" because applicants exercised sufficient control over the leased lands: they made the day-to-day decisions concerning the apple cultivation, used their own machinery, and did all of the work pruning and spraying the trees and picking the apples themselves. Id. at ¶ 14.

16

David Moore is exceeding the scope of the uses allowed under the three permits applicable to the David Moore Parcel, and has breached the terms of those permits.

The 1973 Organ Shop Permit was issued by the ZBA and became final without appeal. It cannot now be challenged, either directly or indirectly. 24 V.S.A. § 4472(d). However, a permittee may be held to the scope of a permit and any conditions imposed in it by the municipal panel. "[T]he finality and exclusivity doctrines embodied in § 4472(d) do not preclude an interested person from taking action to ensure compliance with the terms of a zoning permit." In re Charlotte Farm & Mills, 172 Vt. 607, 608 (2001) (mem.). Interested persons may request enforcement from the zoning administrator and may later appeal the zoning administrator's determination that the activities are within the scope of a particular permit. Id. (citing In re Sardi, 170 Vt. 623, 626 (2000)). Further, enforcement cases brought by municipalities or interested parties under 24 V.S.A. § 4470(b) to enforce decisions of municipal panels are not subject to the statute of limitations in 24 V.S.A. § 4454(a).

The scope of a permit is defined by what was applied for in the application and was approved, including any conditions that may have been imposed by a municipal panel. See, e.g., In re Beliveau Notice of Violation, No. 274-12-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Sept. 12, 2008) (Wright, J.), aff'd No. 2010-070 (Vt. July 16, 2010) (unpublished mem.) (citing Town of Bennington v. Hanson-Walbridge Funeral Home, Inc., 139 Vt. 288, 292–93 (1981)). The 1973 Organ Shop Permit therefore allows the use of the building and property for the pipe organ construction and restoration business.[18]

---

[18] Because the Organ Shop use holds a ZBA-issued permit issued in compliance with the zoning ordinance in effect at the time, it is not a nonconforming use as that term is used in the state statute. 24 V.S.A. § 4303(15).

However, the 1973 Organ Shop Permit contains no express conditions, and no party suggests that any are contained in any written decision issued by the ZBA on that application. Therefore, nothing in the 1973 Organ Shop Permit prohibits the continued use of some or all of the property for agriculture or other uses not requiring a zoning permit. To be enforceable, conditions must be expressly stated either on the face of the permit or the permit decision. In re Kostenblatt, 161 Vt. 292, 299 (1994). Representations made to the zoning board by an applicant are not enforceable unless expressly incorporated as conditions of the permit, Kostenblatt, 161 Vt. at 299, and a board's findings of fact may not function as implied permit conditions. In re Stowe Club Highlands, 164 Vt. 272, 276 (1995). Even if a decision refers to factual findings, such findings must be incorporated into the permit as conditions in language sufficiently clear to provide notice of the land use limitations. In re Byrne Trusts NOV, No. 150-7-08 Vtec, slip op. at 14–15 (Vt. Envtl. Ct. July 15, 2009) (Durkin, J.) (rejecting the phrase "based on the facts above" as effective to incorporate factual findings as express conditions).

The other two permits applicable to the property—the 1982 Sawmill Permit and the 1997 Garage/Storage Permit—were issued by the Zoning Administrator under Part 6. They also contain no enforceable conditions, and, in any event, the Zoning Administrator has no authority to impose conditions on Part 6 permits. § 6.1 (requiring the Zoning Administrator "unconditionally to issue such permits"). Appellants argue that David Moore's use of these buildings to process lumber destined for use on the Farm-related Properties exceeds the scope of those permits as being "accessory" permits. However, nothing in the Zoning Ordinance prohibits those uses and buildings from being "accessory" to more than one allowed use.

Nevertheless, if, at the time of the applications, the proposed uses or buildings had been considered as being accessory to the Part 7 Organ Shop business use, the Zoning Administrator should have referred the application to the ZBA for

18

Part 7 permits for the new buildings.[19]  Instead, both the 1982 Sawmill Permit and the 1997 Garage/Storage Permit appear to have been considered by the Zoning Administrator under § 6.3 as structures "for agricultural use," a term which is not defined in the Zoning Ordinance.

Regardless of whether the sawing of logs and planing of lumber is considered an "agricultural use," both permits became final without appeal and cannot now be challenged, either directly or indirectly. 24 V.S.A. § 4472(d).  They cannot be challenged even if they were not properly issued by the Zoning Administrator and were instead granted in error as being ultra vires.  City of South Burlington v. Department of Corrections, 171 Vt. 587, 589 (2000) (citing Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 142 (1989)).  If these wood-processing uses were approved in error by the Zoning Administrator, instead of being sent to the ZBA for approval under Part 7, they fall within the statutory definition of nonconforming use as a "use improperly authorized as a result of error by the administrative officer."  24 V.S.A. § 4303(15).  As such, they are not now regulated by the Zoning Ordinance, which does not regulate or limit the expansion or perpetuation of such nonconformities.  See 24 V.S.A. § 4412(7).

---

[19]  Through at least 1997, two separate application forms were in use in Pomfret—one for applications to the Zoning Administrator under Part 6, and one for applications to the ZBA under Part 7.  It is essentially "the responsibility of the administrative officer who receives an application to determine if the officer has authority to act on the application, or whether it must first be referred to a municipal panel for action."  In re Benning Accessory Use Permit, No. 184-9-09 Vtec, slip op. at 4 (Vt. Envtl. Ct. Mar. 25, 2010) (Wright, J.) (citing Wesco, Inc. v. City of Montpelier, 169 Vt. 520, 523 (1999).  "[I]t is not the responsibility of an applicant to determine whether a proposal requires {approval from the municipal panel]; that is the responsibility of the zoning administrator." In re: Appeal of Addison County Eagles, Aerie 3801, No. 13-1-00 Vtec, slip op. at 4 (Vt. Envtl. Ct. May 7, 2001) (Wright, J.).

<u>Enforcement Request Related to Structures Without Permits</u>

The following six structures have been constructed on the David Moore Parcel without a zoning permit: the "Organ Shop Woodshed Addition," the "Organ Shop Sawdust/Shavings Bin Addition," the "Sap Pump House," the "Sap Storage Shed," the "WoodMizer Bandsaw Sawmill Shed,"  and the "Lumber Drying Kiln." Under § 5.4 of the Zoning Ordinance, the construction or emplacement of a "conforming new unattached accessory building" that is smaller than "24 feet x 24 feet x 15 feet high" does not require a permit.

<u>Organ Shop Additions</u>

First, the Organ Shop Woodshed Addition and Organ Shop Sawdust/Shavings Bin Addition are both attached to the Organ Shop building. Because they are not "unattached," even though they are below the size limitation, they did not fall within the § 5.4 exemption.  At least the Woodshed Addition therefore needed an amendment to the Organ Shop permit from the ZBA, as an expansion of a structure holding a permit from the ZBA.  However, the Organ Shop Woodshed Addition was constructed prior to fifteen years ago, and therefore the statute of limitations has run on enforcement of the failure to obtain an amendment of the 1973 Organ Shop Permit for its construction.  As to the Organ Shop Sawdust/Shavings Bin Addition constructed in 2001, material facts have not been provided as to whether it is any larger than or located in a different place than the horse trailer formerly used for the purpose.

The two attached additions are used, respectively, to store firewood for heating the Organ Shop and to store sawdust and shavings produced in the Organ Shop.  They therefore do not represent a new unpermitted use for which enforcement might be appropriate as a continuing violation.  See <u>City of St. Albans v. Hayford</u>, 126-7-04 Vtec, at 11-13 (Vt. Envtl. Ct. Feb 12, 2007) (Wright, J.), aff'd 2008 VT 36, 183 Vt. 596 (2008) (citing <u>City of Burlington v. Richardson</u>, No. 188-10-03

20

Vtec, slip op. at 12 (Vt. Envtl. Ct. June 27, 2006) (Wright, J.) (distinguishing between ongoing use violations and one-time construction violations)); In re Hale Mountain Fish and Game Club, 149-8-04 Vtec, 259-12-05 Vtec, slip op. at 6 (Vt. Envtl. Ct. Nov. 21, 2008) (Durkin, J.) (stating that "the fifteen-year statute of limitations does not apply to use violations, which are seen as continuous violations") (citing Richardson, 188-10-03 Vtec, slip op. at 12.).

Maple Sap Structures

The Sap Pump House and the Sap Storage Shed are both smaller than the § 5.4 exemption size. No party contests that they fall within the state statutory prohibition of municipal regulation of "farm structures," now found in 24 V.S.A. § 4413(d). In any event, Appellants' request for enforcement relates only to the lumber processing activities on the David Moore Parcel, and does not involve the sugaring operations of the Farm Partnership or its members.

Lumber-Processing Structures

The remaining buildings without permits are the 27' by 11' WoodMizer Bandsaw Sawmill Shed, constructed in 1999, and the 34' by 12' "Lumber Drying Kiln," constructed in 2004.

Appellees first argue that each of these two buildings has a footprint covering an area smaller than the 24' x 24' area of structures exempt under § 5.4. The Court must apply the plain language of the zoning ordinance, and does not turn to principles of statutory construction unless the plain language is ambiguous. See Stowe Club Highlands, 164 Vt. at 279–80 (explaining that words in zoning ordinances are construed according to their plain and ordinary meaning). The plain language of § 5.4 is not ambiguous: it provides an exemption from the requirement to obtain a permit only for conforming new unattached accessory structures "not larger than 24 feet x 24 feet x 15 feet high." Section 5.4 limits each individual dimension of the exempt size structure; it does not simply limit the total footprint.

21

Accordingly, neither the WoodMizer Bandsaw Sawmill Shed nor the Lumber Drying Kiln qualifies as exempt under § 5.4, as each has one lateral dimension longer than 24 feet.

Appellees next argue that these two structures do not need a permit because they are statutorily exempt from municipal regulation, pursuant to what is now codified as 24 V.S.A. § 4413(d), as structures related to "accepted agricultural and silvicultural practices, including the construction of farm structures." Appellees do not appear to distinguish between the analysis of whether these two structures are exempt because they are used to process logs <u>from</u> the Farm-related Properties, or whether they are exempt because the lumber produced in them is destined for use <u>on</u> the Farm-related Properties.

The statutory provision limiting municipalities' authority to regulate agriculture and silviculture has two distinct sections, one governing "farm <u>structures</u>" and one governing "accepted agricultural and silvicultural <u>practices</u>." The statute does not protect all "accepted agricultural and silvicultural practices"; rather, it protects those "accepted agricultural and silvicultural practices" that have been defined under authority of 10 V.S.A. § 1021(f), or 10 V.S.A. § 1259(f), or 6 V.S.A. § 4810, by the commissioner of agriculture (now secretary of agriculture, food and markets) for agricultural practices and by the commissioner of forests, parks and recreation for silvicultural practices. 24 V.S.A. § 4413(d).

The only "Accepted Agricultural Practices" that have been defined by the agency of agriculture under the cited statutes do not address the sawing of logs or the drying or planing of lumber as "agricultural practices," nor do they address the growing of trees for lumber as an "agricultural practice."[20] The only accepted silvicultural practices that have been defined by the department of forests, parks and

[20] Vt. Agency of Agriculture, Accepted Agricultural Practice Regulations (2006), <u>available at</u> http://www.vermontagriculture.com/ARMES/awq/AAPs.htm.

recreation under the cited statutes are the "Acceptable Management Practices for Maintaining Water Quality on Logging Jobs in Vermont" (AMPs).[21] They define in detail acceptable practices for logging tracts of land, up to the point of loading logs onto log trucks at the log landing and cleaning up the landing after the logging job is completed. They do not address the operation of sawmills, whether on the property that is being logged, or on other property,[22] and do not address the drying or planing of lumber as silvicultural practices. Accordingly, Appellees' lumber processing activities do not qualify as "accepted agricultural or silvicultural practices" as that phrase is defined by 24 V.S.A. § 4413(d).

As of 1994, when the state statute first stated that "[n]o municipal permit for a farm structure shall be required," the provision of § 6.3 of the Zoning Ordinance requiring a permit from the Zoning Administrator for the construction of "structures for agricultural use" was therefore superseded by the state statute to the extent that a "structure for agricultural use" overlapped with the definition of "farm structure" in the statute.

For the purposes of 24 V.S.A. § 4413(d), the phrase "farm structure" is defined as "a building for housing livestock, raising horticultural or agronomic plants, or carrying out other practices associated with agricultural or farming practices, including a silo, as "farming" is defined in 10 V.S.A. § 6001(22), but excludes a dwelling for human habitation." The definition of farming in 10 V.S.A. § 6001(22), in turn, includes the "cultivation or other use of land" for "growing food,

---

[21]   Vt. Department of Forests, Parks and Recreation, Acceptable Management Practices for Maintaining Water Quality on Logging Jobs in Vermont (1987), available at http://www.vtfpr.org/watershed/documents/Amp2006.pdf.

[22]   A different statutory section, 10 V.S.A. § 2623(3), not referenced in the 24 V.S.A. § 4413(d) exemption, authorizes the commissioner to adopt regulations governing licensing requirements for "portable sawmills, portable chip harvesters[,] and other similar portable forest product utilization systems."

fiber, Christmas trees, maple sap, or horticultural or orchard crops." 10 V.S.A. § 6001(22)(A). While the growing of Christmas trees, sugar maple trees, or apple trees is explicitly included in this definition, the growing of trees for lumber is not.[23] Therefore, as was the case in In re Appeal of Charlotte Farm and Mills, in which the Court made a finding, based on testimony at trial, that silviculture "refer[s] to the growing, cultivating and harvesting of trees," it may be necessary to take evidence as to the distinction between the terms silviculture, agriculture, and farming. In re Appeal of Charlotte Farm and Mills, No. 45-3-99 Vtec, slip op. at 3 (Vt. Envtl. Ct. Dec. 13, 1999) (Wright, J.), aff'd 172 Vt. 607 (2001) (mem.).[24]

If the growing of trees for lumber is not covered by the terms agriculture or farming (even assuming that it does fall within the definition of "silviculture"), then the processing of sawlogs from forest land also is not covered by the definition of farming in 10 V.S.A. § 6001(22)(E) as the "on-site storage, preparation and sale of

[23] Appellees argue that the growing of trees for lumber comes under the definition of "growing . . . fiber." Although a Court may apply the ordinary meaning of undefined statutory words, Stowe Club Highlands, 164 Vt. at 279, the ordinary meaning of "growing . . . fiber" is disputed by the parties, so that expert evidence from a witness familiar with the field of silviculture may be necessary as to any use of the term "fiber" to refer to lumber.

[24] The fact that a building may be used to produce lumber that is later used to construct farm structures or residences related to a farm cannot itself make the lumber processing activities into "farming" within the definition in 10 V.S.A. § 6001(22), or make the lumber processing building itself into a "farm structure." That is, the ultimate destination of the product or material, whether it is lumber, or hardware, or animal feed, or fencing, or fertilizer, for use on a farm, cannot be determinative of whether the processing or manufacturing operation is considered to be "farming." Such an analysis would be unworkable, and would go beyond the intent of 10 V.S.A. § 6001(22), as all sorts of manufacturing operations could become exempt from municipal regulation as "farm" structures. Therefore, the question of whether Appellee's proposed Newman Planer/Shavings Building, WoodMizer Bandsaw Sawmill Shed, and Lumber Drying Kiln require § 7 permits turns on whether the processing of lumber is considered to be "farming" or an "agricultural use[]".

agricultural products principally produced on the farm." That is, material facts appear to be in dispute as to whether the sawing of logs and/or the drying and planing of lumber produced from those logs is considered the "preparation" of "agricultural products" or is considered an "agricultural use" as the term is used in § 6.3.[25] If the sawing of logs and the drying of lumber are not considered to be "farming" under 10 V.S.A. § 6001(22) or "agricultural uses" under § 6.3, then ZBA approval under Part 7 was necessary for the WoodMizer Bandsaw Sawmill Shed and the Lumber Drying Kiln.

Newman Planer/Shavings Building Application

In April of 2008, A. David Moore, on behalf of "A. David Moore Inc.," applied for a zoning permit to build a new 36' x 18' building on the David Moore Parcel; the application proposed the building to be 18' in height, and to be set back 300 feet from the center of the road. Both because of its length and because of its height, regardless of its use, it exceeds the size limits for the § 5.4 exemption. In the space for "Description of Proposed Development," the application described the project as "building to house wood planer + store wood shavings" (the "Newman Planer/Shavings Building"). This building is proposed to house the Newman Planer now operating in the Garage/Storage building, and is farther from Appellants' property than is the Garage/Storage building.

---

[25] Appellees argue that the 2007 Pomfret Town Plan uses the term "agriculture" to include the processing of harvested trees into lumber, citing its objective to "encourage full- or part-time agricultural activities . . . such as . . . selective growing of timber, tree farms, and firewood." 2007 Pomfret Town Plan, at 23. However, although this language suggests that the Town Plan may include the growing of trees for timber or firewood within the concept of agriculture rather than silviculture, it is silent as to the inclusion or exclusion of the later processing of those trees.

By approving the Newman Planer/Shavings Building himself, rather than referring the application to the ZBA for its action under §7.1, the Zoning Administrator implicitly considered the proposed Newman Planer/Shavings Building to be a "conforming structure for agricultural use" covered by § 6.3. Nothing in the Zoning Ordinance limits the Newman Planer or the proposed Newman Planer/Shavings Building to being used solely for a single purpose, that is, solely for the pipe organ construction and restoration business or solely to produce lumber for use on the Farm-related Properties. However, as discussed above with regard to whether Part 7 permits are required for the WoodMizer Bandsaw Sawmill Shed or the Lumber Drying Kiln, material facts are disputed as to whether the planing of lumber falls within the definition of agriculture or farming. If it does not, it is not exempt from municipal regulation under 24 V.S.A. § 4413(d), even if Appellees now propose to use it solely to produce lumber to be used for the buildings, structures, or residences on the Farm-related Properties.

Accordingly, like the WoodMizer Bandsaw Sawmill Shed and the Lumber Drying Kiln, the proposed Newman Planer/Shavings Building is not exempt from municipal regulation by 24 V.S.A. § 4413(d), and will require ZBA approval under Part 7, unless the planing of lumber falls within the definition of farming or agricultural use.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both parties' Motions for Summary Judgment are GRANTED in Part and DENIED in Part, as follows. None of the <u>uses</u> on the David Moore Parcel are at present in violation of the Zoning Ordinance, as the sawing, planing, and drying of lumber are all functions included in the uses and buildings that hold final permits, although the extent of those uses may be subject to future conditions or limitations, depending on whether Part 7 permits will be required for the Newman

Planer/Shavings Building, the WoodMizer Bandsaw Sawmill Shed or the Lumber Drying Kiln.  As to the buildings and structures, the proposed Newman Planer/Shavings building is not exempt from municipal regulation by 24 V.S.A. § 4413(d), and therefore requires a permit from the ZBA under Part 7 of the Zoning Ordinance, unless Applicant can show that the planing of lumber falls within the definition of "farming," under 10 V.S.A. § 6001(22) or of "agricultural use" under § 6.3.  Similarly, the WoodMizer Bandsaw Sawmill Shed and the Lumber Drying Kiln are not exempt as smaller than the required footprint in § 5.3, and should have obtained ZBA permits under Part 7, again unless Applicant can show that the sawing of logs and the drying of lumber, respectively, fall within the definitions of farming or agricultural use.

A telephone conference has been scheduled (see enclosed notice) to discuss what issues remain after this decision, specifically with reference to the twenty questions in the restated Statement of Questions, and whether the parties wish the Court to schedule a brief evidentiary hearing to take evidence on whether the sawing of logs and the drying and/or planing of lumber fall within the definitions of "farming," "agricultural use" or "silviculture."


Done at Berlin, Vermont, this 11th day of October, 2010.


_____
Merideth Wright
Environmental Judge

27